Bouldin, J.
This case comes before ns upon a writ of error to a judgment of the Circuit court of the city of Richmond. The action was a covenant upon the following obligation:
Kottoway, Va., 26th Sept. 1859.
$5,000.
I have this day borrowed of Mrs. R. B. Parish five thousand dollars, in stock of the State of Virginia,, on which interest is payable semi-annually "; and for the repayment of the same, with the accruing interest, I bind myself, my heirs, &c. Witness, my hand and seal,, this 26th September 1859. W. C. Knight. (Seal-)
*407 The case was docketed, by consent, on the 14th day of January 1871, and the declaration filed in open court, on the same day. The declaration set out the covenants, and made proferí thereof; and the breach assigned was, that the defendant, although reasonable time for repayment of the said sum of $5,000 had long since elapsed, had not repaid the same.
The facts of the case were agreed by the parties, by counsel; a jury was waived, and the case was submitted to the court on the law and facts. Those facts, so far as pertinent to the issue between the parties, were in substance, as follows:
On the 26th September 1859, Mrs. R B. Parish, a sister-in-law of the defendant in error, W. C. Knight, with her daughter, was, as she had been for several years, boarding in the family of said Knight, then residing in Nottoway county; and he “borrowed” of her “five thousand dollars, in Virginia State stock,” executing and delivering to her, therefor, the obligation of which we have already given a copy. The stock was borrowed by Knight, to be converted into money, and used in payment of the purchase money of the estate called “AVelton,” then recently purchased by him; and was, in fact, sold by him on the - day of November 1859 for $4,755. Mrs. Parish and daughter continued to reside with Knight down to the 30th of January 1866, when she intermarried with Hudnall; and in contemplation thereof, Knight’s obligation was assigned to Davis, for her separate use; and on and after that day she ceased to board with Knight. Her daughter soon after married also, and ceased to reside with Knight. All accounts for board and charges for interest on Knight’s obligation were fully stated, down to the time of the marriage; and since that time $637.50 had been paid on account of interest. "Receipts passed on both sides, but it was agreed *408 that their form was not to affect the construction of the obligation, and they need not be noticed. On or about the 2d of February, 1870, Knight indicated to Mrs. Hudnall his willingness to deliver to her, at par, .State stock to the amount of five thousand dollars; that amount being then worth only about $2,500. She declined to take it; claiming $4,775, with interest on $5,000 from July 1, 1869; to which time it is agreed that interest had been paid.
The market value of the stock, when sold by Knight, in November 1859, was $4,775.12. On the 1st day of January, 1860 was $4,575; on the 1st day of January 1861 was the same, $4,575; and on the day of trial was $2,525, without interest.
And it was “ further agreed that the defendant may make any defence under the pleas of covenants performed and covenants not broken that he might make under any special plea; and that the court, alike Circuit and Appellate, may draw such inferences from the facts agreed as a jury could be entitled to do.”
The Circuit court gave judgment against the defendant for $2,975, being the aggregate of the then value of the stock aforesaid, and interest thereon from July 1, 1869, with interest on said aggregate sum.
To this judgment the plaintiff excepted; and the facts agreed are all spread on the record. A writ of error to the judgment was awarded by a judge of this court.
The case has been argued with marked learning and ability on both sides; but under the construction which I have placed on the contract it will not be necessary to follow their line of argument.
I concur with the learned counsel for the appellee, that the contract before us, “ is either a stock contract or a money contract; it is either a loan of stock and an *409 obligation to replace it, or it is a loan of money, the proceeds (or more appropriately the agreed value) of stock, and an obligation to repay it, with interest on the face value of the stock;” or I would add, on the money loaned, which in this case is the same thing. One or the other of these constructions, modified as above, should in my opinion be placed on Knight’s obligation; but, unlike the learned counsel, I think it wholly immaterial, on the facts of this case, which construction shall be adopted. The practical result to the parties will be the same under either construction. The judges of this court differ in opinion as to which is the true construction of the contract. My own opinion is, that it is purely a money -contract; simply borrowing and lending of five thousand dollars, the estimated value of State stock transferred to the borrower, with an obligation to repay the same; the five thousand dollars borrowed, with interest thereon. This, I think, is the literal construction and the legal effect of the obligation, and it is a construction which will do substantial justice between the parties The language of the obligation, which is copied above, imports a loan of money. “ I have this day borrowed from K>. B. Parish, five thousand dollars, (a comma after the word dollars) in stock of the State of Virginia,” &c. He does not borrow bonds or stock of the State for five thousand dollars; but he borrows “five thousand dollars in stock of the State of Virginia (how much stock it required to be worth that sum does not appear on the face of the covenant and is not shown by the facts agreed), and for the repayment of the same, with the accruing interest,” he bound himself, &c., &c. Here, again, it will be observed, the words of the obligation are entirely appropriate to a loan of money, but not at all appropriate to a loan of stock. Had it been the latter, the obligation would have been for its return or *410 replacement, and not as here, for the repayment of the-same; language appropriate only to a return of money. And the learned counsel for the appellee has himself acknowledged the justice of this criticism, in stating the propositions before the court. He says, it is either a money contract with an obligation “to repay,” &c., or a stock contract with an obligation “ to replace ,” &c. He uses the right word in the right place. The-language is apt and the distinction pertinent. But there is another reason apparent on the face of this obligation, for treating it as a contract for the loan of money— as an obligation for five thousand dollars — not stock, but money. There is on the margin of the obligation the usual dollar mark, and figures representing five thousand dollars, thus, “$5,000,” showing, as I think unmistakably, when taken in connection with the language,, that it was the intent of the parties to secure to the lender $5,000. And I am fortified in this view of the contract by the construction uniformly placed on similar-language under a like state of facts in construing legacies. Such language has been uniformly held to constitute a money legacy — a general pecuniary legacy— called demonstrative, and not a specific legacy of that much stock.
It is contended, however, that such a- construction would be fatal to the appellant’s claim; that the eoutract would be usurious, and therefore void. It is not contended that the rate of interest stipulated for is usurious; for that is only six per cent, on the sum borrowed. But it is contended, that the contract, if treated as an obligation for the payment of five thousand dollars, is usurious and void, because, as alleged by the defendant in error, the State bonds, from which the loan arose, were at the date of the loan below par, and not worth the sum of $5,000, at which they were rated by the parties; that *411 they were then worth only $4,775; and being rated at $5,000, the contract was usurious. The conclusion'would be difficult to avoid, were the premises true. "We have, however, the contract before us, showing that Knight borrowed $5,000 worth of stock. But, there is not a word in the facts agreed, literally nothing, showing or tending to show, either the amount of State bonds transferred, or their value at the date of the loan, except the obligation itself. That obligation values the stock, whatever the amount was, at $5,000; and, as I have said, we have literally nothing in the record to show that it was then worth less. But, it is argued that it was below par, because it is an admitted fact that on the-.day of November 1859, Knight sold the same stock for only $4,775. The fact is true, but the conclusion a non sequ tur. The contract was made the 26th of September 1859, and the sale by Kuight on the -day of November 1859 ; (what day does not appear;) and it would be more reasonable to conclude that for some sufficient cause there was a decline in State bonds between those dates; and, more especially, when we remember that these bonds did decline between the date of Knight’s sale and the first of January thereafter, at about the same rate; for it is an admitted fact, that whilst they were worth, at the date of Knight’s sale, $4,775.12, they had declined, on the 1st of January 1860, say, in six weeks, to $4,575, their then value; that decline bearing, it will be seen, very nearly the same proportion to $4,775.12 as the latter sum does to $5,000, and showing a proportionate decline. I see nothing, then, in these figures, which can properly lead us to the conclusion that the stock transferred was over-estimated by the parties; and there is literally nothing in the record from which that can be legitimately inferred as a fact in- the cause. We must, therefore, *412 take the estimate of the parties as true; and the contract, in my opinion, is not usurious.
This view of the case renders it unnecessary that we should follow the learned counsel in their interesting and exhaustive arguments as to the time when the covenant was broken and the measure of damages. Being in my opinion a simple covenant to pay five thousand dollars, with legal interest thereon, the plaintiff in error was entitled to a judgment for that sum, with interest from the first day of July 1869 till paid, all interest having been fully paid to that date. And in these views Judge Anderson concurs.
It is perhaps proper to say, as undue prominence may seem to have been given to a minority opinion, that when the above was prepared the writer supposed they were the views of the court. But a majority of the judges do not concur in those views. They hold that the contract between the parties was for a loan of stock, to be replaced in kind, and notaborrowing and lending of money; that, fairly and reasonably construed, the contract was either for the loan of State bonds for five thousand dollars, of par value, to be replaced by like bonds of like value, with accruing interest; or for the loan of State bonds of the value of five thousand dollars, to be replaced by State bonds of like value, with interest. The practical result of this construction is in all respects the same with that attained. by the views of the minority. The contract can only be performed by returning to the ■lender State stock of the same value with that of the ■stock loaned, viz: $5,000; and that sum, with interest, •must necessarily be the measure of damages for a failure to return the stock.
But as the plaintiff in error seems never to have demanded more than the sum of four thousand seven *413 hundred and seventy-five dollars, the amount for which the defendant in error sold the stock, soon after the loan, and does not claim more now, it is the opinion of all the judges that judgment should be entered for that sum only, with interest thereon from the first day of July 1869, till paid.
We reach this result with the greater satisfaction, because we think it reaches the substantial justice of the case. The plaintiff in error secures all that her stock sold for, very soon after the loan was made; and the defendant in error is made to pay only what he actually realized. We think that neither party contemplated a contract of speculation or hazard. Their relation to each other, at the time of the loan, forbids the idea.
The judgment of the Circuit court must be reversed, with costs to the plaintiff in error, and. judgment entered here for four thousand seven hundred and seventy-five dollars, with interest from the first day of July 1869, till paid, and the costs in the Circuit court.
Anderson, J. concurred in the opinion of Bouldin, J.
The other judges did not concur in the opinion of Bouldin, J., as to the construction of the contract; but all concurred in reversing the judgment, and rendering a judgment in favor of the appellant for the value of the stock at the time of the loan.
Judgment reversed.